NICOLA T. HANNA
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
JENNIFER L. WAIER (Cal. Bar No. 209813)
Assistant United States Attorney
       411 W. Fourth Street, Suite 8000
       Santa Ana, California 92701
       Telephone: (714) 338-3550
       Facsimile: (714) 338-3708
       E-mail:    Jennifer.Waier@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. SA CR 14-152-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S UNOPPOSED MOTION TO TAKE THE FOREIGN DEPOSITION OF UBS BANKER ANDREAS MAAG IN SWITZERLAND |
| v. | |
| ALEXANDER ZBICKI, | (No Hearing Required) |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby moves to take the deposition of UBS Banker Andreas Maag, who is a citizen and resident of Switzerland, pursuant to Federal Rule of Criminal Procedure 15.  Defendant does not oppose this Motion.

/ / /

/ / /

/ / /

The Motion is based on the attached Memorandum of Points and Authorities filed concurrently herewith and all the records in this case.

Dated: June 25, 2018

NICOLA T. HANNA
United States Attorney

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

_____/s/_____
JENNIFER L. WAIER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Alexander Zbicki is charged in an eight-count indictment with devising and executing a fraudulent Indonesian gold and platinum deal.  The fraudulent scheme operated, in substance, in the following manner: (1) defendant purported to be the seller's United States representative for a large Indonesian gold and platinum deal that would result in billions of dollars in profits ("the Gold Deal"); (2) defendant solicited funds from victims for expenses relating to the Gold Deal and personal loans secured by the Gold Deal; (3) defendant promised victims upwards of $1,000,000 for every $1,000 invested or loaned; (4) defendant told victims that his clients included the Federal Reserve, the United States Treasury, the United Nations, The Prince Charles Trust, the Prince of Dubai, and the Vatican; (5) defendant assured victims that he had previously closed a similar gold and platinum deal with the Federal Reserve that yielded large profits; (6) defendant told victims that the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), and Interpol were supporting the Gold Deal; and (7) in return for the investment or loan, defendant gave some victims UBS bank guarantees for millions of dollars.

At the time, as defendant well knew, he (1) was not the seller's representative to a large gold and platinum deal; (2) did not pay the promised returns to the victims; (3) did not have the Federal Reserve, the United States Treasury, the United Nations, The Prince Charles Trust, the Prince of Dubai, and the Vatican as clients; (4) had never closed a Federal Reserve gold and platinum

deal; (5) did not have the support of the FBI, the CIA, or Interpol; and (6) gave victims bogus UBS bank guarantees.

By devising, executing, and participating in the above scheme, defendant caused over 10 victims to lose approximately $1.6 million.

In carrying out the scheme to defraud, defendant concealed that he used the investor funds for his own personal use and not the Gold Deal, including the purchase of a BMW, dining and entertainment expenses, and living expenses. In addition, defendant failed to disclose to some victims that he had been convicted of felony grand theft and a misdemeanor for writing checks with insufficient funds. Defendant did not disclose to investors that he was on criminal probation at the time of the offense.

In furtherance of the fraud, defendant told investors that a UBS bank employee, Andreas Maag, was the banker executing the Gold Deal and gave investors Mr. Maag's purported resume, which included his education, employment history, and details about his family and hobbies. In reality, Mr. Maag had nothing to do with the Gold Deal, as it was a scam. In addition, Mr. Maag did not give defendant his purported resume nor authorize defendant to use it in any way. Defendant never had any contact with Mr. Maag. Finally, defendant gave investors bank guarantees purportedly issued by UBS and signed by Mr. Maag. Mr. Maag never signed those bank guarantees.

Because of defendant's representations, Mr. Maag's testimony will be material at trial. In or about August 2016, the government asked to depose Mr. Maag in Switzerland pursuant to the Treaty on Mutual Assistance in Criminal Matters ("MLAT"). On May 29, 2018, the government's request was granted by Switzerland. Mr. Maag's

4

deposition is set to be taken on July 17, 2018 in Zurich, Switzerland.

By this unopposed motion, the government seeks the Court's permission to travel to Switzerland, with defendant and his attorney, and take the deposition of Mr. Maag pursuant to Rule 15. Defendant's rights will be fully respected, as his attorney will have the opportunity to cross-examine Mr. Maag and defendant will be present at the deposition to assist his attorney.  Pursuant to Rule 15(d)(1), the government will pay for the travel for defendant and his counsel to attend the deposition.  Indeed, defendant does not oppose the motion.  Accordingly, the Court should grant the government's motion.

## II.   FEDERAL RULE OF CRIMINAL PROCEDURE 15 AUTHORIZES MR. MAAG'S FOREIGN DEPOSITION

The government requests this Court to order Mr. Maag to be deposed in Switzerland to preserve his testimony for trial pursuant to Federal Rule of Criminal Procedure 15(a)(1).  The rule states, in relevant part, that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial.  The court may grant the motion because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P. 15(a)(1).  "Rule 15(a) allows the district court broad discretion in deciding whether to order depositions in criminal cases . . ."  United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000).

"Rule 15(a) does not require any conclusive showing of 'unavailability' or 'material testimony' before a deposition can be taken in a criminal case.  Rule 15(a) only requires that the trial

court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." <u>United States v. Omene</u>, 143 F.3d 1167, 1170 (9th Cir. 1998). While the Ninth Circuit has not required consideration of these factors, courts often consider the following factors when considering whether to grant a Rule 15 motion: (1) the unavailability of the witness at trial; (2) the good faith effort by the movant to obtain the witness's presence at trial; and (3) a demonstration by the movant that the expected testimony would be favorable and material. <u>See</u> <u>United States v. Zuno—Arce</u>, 44 F.3d 1420, 1425 (9th Cir. 1995).

As to the first two factors, the government asked Mr. Maag to voluntarily travel to the United States for trial, but he refuses to do so. Thus, Mr. Maag is unavailable for trial as he is beyond the subpoena power of the Court and cannot be compelled to testify at trial. <u>See</u> 28 U.S.C. § 1783; Fed. R. Crim. P. 17(e)(2). Accordingly, the government requested that Switzerland compel Mr. Maag's deposition pursuant to the MLAT. Based on the government's request, Switzerland is compelling Mr. Maag to be deposed by the parties in Zurich pursuant to the MLAT. As to the third factor, Mr. Maag's testimony is material as he will testify, among other things, that (1) he was not part of defendant's Gold Deal; (2) he never signed any of defendant's bank guarantees; (3) he never talked to or met with defendant; and (4) he never allowed defendant to use his resume or name. Because Mr. Maag's testimony is material and favorable to the government's case, this Court should grant the government's motion.

### III. DEPOSITION PROCEDURES

Rule 15(e) provides that, unless ordered otherwise by the Court, a deposition "must be taken and filed in the same manner as a deposition in a civil action[.]"  Furthermore, "[t]he scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial."  Fed. R. Crim. P. 15(e)(2).  Federal Rule of Civil Procedure 28(b) allows the taking of depositions in foreign countries "under an applicable treaty or convention."  Here, the parties are taking Mr. Maag's deposition under the MLAT.  The government will request that the depositions be taken in a manner consistent with the MLAT and defendant's Sixth Amendment rights.  Thus, the government asks that the following procedures be followed:

1. The questioning be conducted by the attorneys for the government and for defendant;

2. Mr. Maag will be questioned first by the government, then cross-examined by defendant's attorney, and then questioned by the government on redirect examination;

3. The questions and the answers of the witness will be recorded verbatim by a court reporter; and

4. The parties are not to object to any line of questioning during the deposition, apart from objections to the form of the question.  All objections, apart from objections to the form of a question, are deemed preserved by the parties and will be considered by the Court at a later scheduled hearing on the depositions.

**IV.   CONCLUSION**

       For the foregoing reasons, the Court should grant the government's motion to depose Mr. Maag in Switzerland pursuant to Federal Rule of Criminal Procedure 15.